# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DANIEL R. JARMON,

                    Petitioner,       :                    Case No. 1:24-cv-278


        - vs -                                             District Judge Susan J. Dlott
                                                           Magistrate Judge Michael R. Merz

WARDEN, Southeastern Correctional
    Institution,

                                                :
                    Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Daniel Jarmon brought this habeas corpus case *pro se* pursuant to 28 U.S.C. §
2254 to obtain relief from his conviction in the Common Pleas Court of Butler County, Ohio, on
two counts of aggravated robbery with firearm specifications and the consequent sentence
(Petition, ECF No. 1). On Order of Magistrate Judge (now Chief Magistrate Judge) Stephanie K.
Bowman, Respondent has filed the State Court Record (ECF No. 5) and a Return of Writ (ECF
No. 6). In her Order, Judge Bowman set a reply date of twenty-one days after the Answer/Return
was filed, September 16, 2024, but Petitioner has not filed a reply. The case is therefore ripe for
decision. The Magistrate Judge reference was recently transferred to the undersigned to help
balance the Magistrate Judge workload in this District (Transfer Order, ECF No. 7).

**Litigation History**

On June 24, 2020, Jarmon was indicted on two counts of aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1), each with a three-year firearm specification. (Indictment, ECF No. 5, Ex. 1). Jarmon entered a plea of not guilty to the charges, but a trial jury convicted him on both counts and specifications. *Id.* at Ex. 4.  He was sentenced to indefinite consecutive terms of eleven to sixteen and one-half years in prison on each count and additional mandatory and consecutive terms for the firearm specifications.

With the assistance of counsel, Jarmon appealed to the Ohio Twelfth District Court of Appeals, raising the following assignments of error:

1. The trial court erred in convicting Appellant based on insufficient evidence and in convicting him against the manifest weight of the evidence in violation of the Fourteenth Amendment.

2. Appellant was deprived of his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendment[s] and related Ohio constitutional rights.  He specifically claimed counsel failed to raise meritorious legal arguments, to object to inadmissible evidence, to pursue a motion to suppress, and to present mitigation evidence at sentencing.

3. Mr. Jarmon was deprived of his right to a fair trial and due process of law by being forced to appear before the jury in jail clothing.

4. The sentence imposed was contrary to law [because] here a court imposes an indefinite sentence above the maximum sentence pursuant to the Reagan Tokes Act, the sentence is an unconstitutional violation of separation of powers and procedural due process. Where a court imposes a sentence that includes a consideration of the defendant's unwillingness to plead guilty, the sentence is unconstitutional. Where a court imposed a sentence based on factors that are not supported by the record, the sentence is unconstitutional. Where a court imposes maximum consecutive sentences, which are not supported by the record, the sentence is unconstitutional.

2

(Appellant's Brief, State Court Record, ECF No. 5, Ex. 7). The Twelfth District affirmed the convictions and sentence. *State v. Jarmon,* 2022-Ohio-2327 (Ohio App. 12th Dist. Jul. 5, 2022). Jarmon persuaded the Ohio Supreme Court to accept a delayed notice of appeal, but the court then declined to exercise jurisdiction. *State v. Jarmon*, 170 Ohio St. 1441 (2023). Jarmon filed his habeas corpus petition in this Court be depositing it in the prison mail system on May 8, 2024 (Petition, ECF No. 1, PageID 15). He pleads the following grounds for relief:

> **Ground One**: A conviction based on legally insufficient evidence constitutes denial of due process, pursuant to the Due Process Clause.
>
> **Supporting Facts**: With regard to two (2) separate alleged robberies in this case, one alleged victim was unable to give a physical description of Petitioner, and testified that he only saw "some individual" with their back towards them, while alleged victim number two testified that he was only "50%" positive as to the identification of Petitioner even after being shown two separate photo array lineups.
>
> **Ground Two**: Petitioner was deprived of his right to the effective assistance of counsel in violation of the 6th and 14th Amendments of the U.S. Constitution.
>
> **Supporting Facts:** Trial counsel failed to object to inadmissible testimony in contravention of Ohio Evidence Rule 602; failed to investigate and present available mitigation evidence regarding Petitioner's childhood trauma, history of mental health diagnosis, and problems with drug addiction at the sentencing hearing; failed to pursue the denial of a motion to suppress evidence of an unduly suggestive photo lineup procedure that created the substantial likelihood of irreparable misidentification of Petitioner at trial.
>
> **Ground Three**: Petitioner was deprived of his right to a fair trial and due process of law by being forced to appear before the jury in jail clothing.
>
> **Supporting Facts:** The U.S. Supreme Court has held that a defendant's right to due process of law is violated when he is compelled to stand trial before a jury wearing identifiable prison

3

clothing, and Petitioner did not knowingly and intelligently waive his right not to appear at trial in street clothing.

**Ground Four**: The sentence imposed upon Petitioner is contrary to law, pursuant to the separation of power's doctrine of Articles I, II. III of the U.S. Constitution.

**Supporting Facts**: Petitioner was sentenced above the maximum sentence, pursuant to Ohio's Reagan Tokes Act, unconstitutionally sentenced due to his unwillingness to plead guilty, unconstitutionally sentenced based on factors not supported by the record, and unconstitutionally sentenced to a maximum consecutive sentence which is unsupported by the record.

*Id.* at PageID 5-10.

# Analysis

## Statute of Limitations

Respondent asserts that the Petition is barred by the one-year statute of limitations adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"). Petitioner filed no reply. Asked about timeliness in the standard form of petition, he did not answer the question (Petition, ECF No. 1, PageID 13).

28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Calculating the limitations date under § 2244(d)(1)(A), Respondent argues that the conviction became final on direct appeal August 19, 2022, the last day on which Jarmon could have appealed as a matter of right to the Ohio Supreme Court (Return, ECF No. 6, PageID 493). Respondent concedes that the statute was tolled under § 2244(d)(2) when the Ohio Supreme Court allowed a delayed appeal, but argues it began to run again when that court declined to exercise jurisdiction and the ninety days for seeking certiorari expired. Adding the 145 days before the Supreme Court allowed a delayed appeal to the 253 days after the time for seeking certiorari expired places the filing beyond the statute date.

The Magistrate Judge disagrees. Appellate filing deadlines protect the State's interest in the finality of a conviction; federal habeas courts enforce those deadlines to protect that finality interest. But here the State of Ohio, through its highest court, waived that protection by allowing a delayed notice of appeal which effectively reopened the direct appeal. Because Jarmon filed within 253 days of finality calculated in that manner, the Magistrate Judge recommends finding the Petition was timely filed. Respondent's statute of limitations defense should be overruled.

**Procedural Default**

Respondent asserts that Jarmon's Third and Fourth Grounds for Relief are procedurally defaulted because they were not fairly presented to the Ohio courts so as to allow those courts to decide these claims on the merits.  As with the statute of limitations defense, Jarmon has not filed a reply so as to respond to this defense.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural

rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

7

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

**Ground Three: Forced to Wear Distinctive Jail Clothing Before the Jury**

In his Third Ground for Relief, Jarmon asserts he was denied a fair trial and due process of law by being compelled to wears distinctive jail clothing before the jury. This issue was presented to the Twelfth District on appeal and that court decided the issue as follows:

> {¶37} The third assignment of error alleges:
>
> {¶38} MR. JARMON WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY BEING FORCED TO APPEAR BEFORE THE JURY IN JAIL CLOTHING.
>
> {¶39} Jarmon contends that he was compelled to appear in jail clothing at trial and that he did not knowingly and intelligently waive the right not to appear in jail clothing.
>
> {¶40} The United States Supreme Court held in *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691 (1976), that a defendant's right to due process may be violated if the defendant is compelled to stand trial before a jury while dressed in identifiable jail clothing. The Court further held that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512-513.

8

{¶41} As an initial matter, the record belies Jarmon's claim that he was wearing identifiable jail clothing. Based on the trial transcript, it appears that Jarmon was wearing gray sweat clothes, as this is what several witnesses described him as wearing. Even if the gray sweat clothes could be said to suggest jail clothing, Jarmon failed to demonstrate that this is what he was compelled to wear. At one point, the trial court asked defense counsel if Jarmon was going to have "different clothing," and counsel replied that he was unsure, saying that he did not know "where things stood." Neither this nor anything else in the record suggests that Jarmon was forced to wear the clothing that he did. And Jarmon never objected to wearing the clothing in front of the jury.

{¶42} Jarmon fails to convince us that he was compelled to appear in identifiable prison clothing at trial. The third assignment of error is overruled.

*State v. Jarmon*, 2022-Ohio-2327 (Ohio App. 12th Dist. Jul. 5, 2022), ¶¶ 36-42.

Applying the required *Maupin* analysis, the Magistrate Judge notes that Ohio has a relevant procedural rule, the contemporaneous objection rule, that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Sixth Circuit has held this is an adequate and independent state procedural rule. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981). They did so in this case by the ruling of the

Twelfth District that Jarmon had not preserved the asserted error. Jarmon has made no showing of cause and prejudice to excuse his failure to object.

Jarmon's complaint of being made to wear jail clothing, pleaded in his Third Ground for Relief, is thus procedurally defaulted and should be dismissed with prejudice on that basis.

**Ground Four:  Violation of Separation of Powers**

In his Fourth Ground for Relief, Jarmon asserts his sentence above the statutory maximum is unconstitutional under the separation of powers doctrine and for various other reasons. Although he made this claim or claims in the Twelfth District, he did not carry the argument forward to the Ohio Supreme Court. Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). Jarmon's Fourth Ground for Relief is procedurally defaulted and should be dismissed with prejudice on that basis.

**Merits Review**

**Ground One:  Conviction on Insufficient Evidence**

In his First Ground for Relief, Jarmon asserts he was convicted on insufficient evidence. He presented this claim to the Twelfth District on appeal and the court decided the issue as follows:

{¶13} The first assignment of error alleges:

{¶14} THE TRIAL COURT ERRED IN CONVICTING APPELLANT BASED ON INSUFFICIENT EVIDENCE AND IN

CONVICTING HIM AGAINST THE MANIFEST WEIGHT OF EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT.

{¶15} Jarmon contends that the evidence fails to prove that it was he who committed the robberies. He argues that there is no direct evidence placing him at the scene of either robbery or showing that it was he who possessed the stolen items found in the apartment.

{¶16} "An appellate court's task when reviewing whether sufficient evidence supports a defendant's conviction is well-settled and familiar." *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, ¶ 16. The reviewing court asks whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). "By contrast, to evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. The court must decide whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." ' " (Citation omitted.) *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 328, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶17} Jarmon is correct that no direct evidence was presented that he was the one who committed the robberies. The Ohio State Supreme Court has held that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus. Here, the circumstantial evidence presented creates a strong link between Jarmon and the robberies. The stolen cellphone and its case, and the stolen wallet and IDs were found in his apartment. A handgun was used to commit each of the robberies and a handgun with Jarmon's DNA on the grip was found in his bedroom. There is no evidence that anyone else possessed either the stolen items or the handgun. All in all, the evidence persuasively and overwhelmingly shows that it was Jarmon who committed the robberies. This is not the "'exceptional case in which the evidence weighs heavily against the conviction,'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Martin* at 175. Given the strength of the evidence presented, we conclude that in finding Jarmon guilty the jury neither lost its way nor created a miscarriage of justice.

{¶18} "[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. Because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As we have concluded that Jarmon's convictions are not against the manifest weight of the evidence, we also conclude that his convictions are supported by sufficient evidence.

{¶19} The first assignment of error is overruled.

*State v. Jarmon*, supra, ¶¶ 13-19.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial

13

> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

The Magistrate Judge concludes the Twelfth District's decision is a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). The appellate court applied the *Jackson* standard as it has been incorporated in Ohio law. It found that the convictions were based on circumstantial rather than direct evidence. However, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992); *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). As Justice Brennan opined, "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

Jarmon's First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Jarmon claims he received ineffective assistance of trial counsel. He presented this claim to the Twelfth District which decided it as follows:

{¶20} The second assignment of error alleges:

{¶21} APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEEN AMENDMENT AND RELATED OHIO CONSTITUTIONAL RIGHTS.

{¶22} Jarmon contends that his trial counsel's performance was prejudicially deficient with respect to the motion to suppress, at trial, and at sentencing.

{¶23} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984), and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "[J]udicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 585 (1998), citing *Strickland* at 689. To establish prejudice, the defendant must "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 140, quoting *Strickland* at 688.

{¶24} Jarmon first contends that trial counsel was ineffective in arguing for suppression of Esparza's photo identification. In the motion to suppress, counsel argued that the photo lineup was unnecessarily suggestive and created a likelihood of misidentification and argued that the state failed to show that the procedures used satisfied either the statutory requirements for photo lineups in R.C. 2933.83 or constitutional requirements. Jarmon states that counsel also should have argued that the photo lineup was

15

unnecessarily suggestive and created a likelihood of misidentification both because Esparza was shown two different photo lineups and Jarmon's photo was the only one that appeared in both and because police did not use a folder system, which Jarmon asserts is required by R.C. 2933.83.

{¶25} We find no merit in either potential argument. We see nothing in the record that suggests Esparza was shown two photo lineups. Esparza testified about only one lineup, and only one lineup was submitted into evidence (State's Exhibit 40). As for a folder system, this court has held that R.C. 2933.83 does not require one: "After a thorough review of R.C. 2933.83, we can find no indication that the folder system or a substantially similar system *must* be utilized by law enforcement agencies or criminal justice entities in performing a photo lineup." (Emphasis sic.) *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 26, citing *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 41 (stating that "[t]he statute does not require the use of the folder system"). Therefore, Jarmon has failed to establish deficient performance in connection with the suppression of Esparza's photo identification.

{¶26} Jarmon next contends that trial counsel's performance was deficient during the trial. He first argues that counsel should have objected to Detective Flick's testimony about the ping information from Esparza's and Jarmon's cellphones. Jarmon claims that the testimony was inadmissible because: (1) Flick lacked personal knowledge; (2) the testimony was hearsay; and (3) it violated the Confrontation Clause. "A witness is required to testify from first-hand knowledge which has been acquired by perceiving a fact[.]" 1980 Staff Note, Evid.R. 602. For this reason, Evid.R. 602 excludes testimony from a witness who has no "personal knowledge of the matter." Evid. R. 802 excludes hearsay testimony. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Finally, the Confrontation Clause guarantees a defendant's right to confront witnesses against him, which means that "[a] witness's testimony against a defendant is * * * inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527 (2009).

{¶27} Detective Flick testified that before he began his investigation the police had already used the ping information from Esparza's cellphone to locate it in the area of the apartment complex, so he began his investigation by conducting surveillance there. Flick

16

further testified that while he watched the apartment complex another officer used the cellphone's ping information to track the phone and continuously updated him as to its location. This testimony was not offered to prove the location of Esparza's cellphone. Instead, it was used to explain why Detective Flick was watching the apartment complex. It was also a reason why police obtained a search warrant for Jarmon's apartment. Ultimately, it was not the location of Esparza's cellphone that connected Jarmon to the robberies, but the items discovered inside his apartment. This ping testimony had little to do with whether Jarmon committed the robberies. While the ping information helped identify Jarmon as a possible suspect, the stolen items found in his apartment made him the leading primary suspect.

{¶28} The ping testimony regarding Jarmon's cellphone, though, is another matter. Detective Flick's testimony about Jarmon's cellphone records, obtained with a second search warrant, was offered to connect Jarmon to the robberies by placing him near their locations around the time that they occurred. The state implicitly concedes that this testimony was inadmissible hearsay, as it was offered to prove the location of Jarmon's cellphone. Nevertheless, we agree with the state that even absent this testimony, the evidence linking Jarmon to the crimes was overwhelming. Even if this testimony had been excluded, the outcome of the trial would not have been different.

{¶29} Jarmon also argues that trial counsel failed to meaningfully cross-examine the forensic scientist about the DNA test results. The scientist testified that the DNA profile found on the handgun recovered from Jarmon's bedroom was mixed but that Jarmon's profile was dominant. Jarmon claims that mixed DNA profiles are complicated to interpret and subject to mistakes involving subjectivity and bias, and he alleges that trial counsel should have asked the forensic scientist about the editing, application, and error rates prevalent in this kind of DNA analysis.

¶30} The Ohio Supreme Court has said that to prevail on a claim like Jarmon makes here, "a defendant must identify the questions that he believes his counsel should have asked and must provide some sense of the information that might have been elicited." (Citation omitted.) *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 155. Otherwise, the reviewing court "will presume that the choice to forgo cross-examination 'constituted a legitimate tactical decision.' " (Citations omitted.) *Id.*, quoting *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 220. Jarmon does not indicate what information his questions would have elicited, and thus

whether they would have been effective is merely speculation on his part. Jarmon fails to explain how further cross-examination of the forensic scientist would have made an appreciable difference in this case. *See State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶ 90 (holding that counsel made a legitimate tactical decision to forgo additional cross-examination when the defendant "fail[ed] to explain how further cross-examination of [the witness] would have made a difference in his case").

{¶31} Lastly, Jarmon contends that trial counsel's performance was deficient at the sentencing hearing. Jarmon first claims that counsel was not prepared for sentencing and knew nothing about mitigation factors that might have reduced his sentence.

{¶32} At sentencing, trial counsel mentioned Jarmon's criminal record, that he maintained his innocence, and had possible mental-health issues:

> * * * I know that Mr. Jarmon, you know, when we first met and through the course of this matter has steadfastly maintained his innocence with myself. It's * * * I know that Mr. Jarmon, you know, when we first met and through the course of this matter has steadfastly maintained his innocence with myself. It's one of the reasons we had this matter set for trial and took this matter to trial.
> * * * As evidenced by some of the pre-sentence investigation as well as look at his—review of his discovery, I know Mr. Jarmon had one contact with the Court as a juvenile, at least that I can recall. And I think most of his contacts with the Court were primarily traffic and/or misdemeanor related.
>
> I don't know that—remember specifically if Mr. Jarmon had any prior felony contacts with the Court. * * * I know there w[ere] some remarks in the pre-sentence investigation about having some anxiety and depression, that he was using illicit substances to help self-medicate that. I don't know if that had any play or implication in this related matter or not.

{¶33} After counsel spoke, several members of Jarmon's family addressed the court. They talked about Jarmon's childhood trauma, history of mental health problems, and his problems with learning and addiction. Jarmon contends that trial counsel should have investigated these issues, presented documentation, consulted with

an expert on the effects of childhood trauma, and called additional witnesses.

{¶34} "In general, the extent to which counsel presents mitigation evidence at a sentencing hearing is a matter of trial strategy. '[E]ven debatable trial tactics and strategies do not establish ineffective assistance of counsel.' " (Citations omitted.) *State v. Brewer*, 12th Dist. Brown No. CA2020-11-008, 2021-Ohio-2289, ¶ 14, quoting *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 25. The record here does not show that trial counsel failed to investigate the possibility of presenting additional mitigating evidence. We see little reason to conclude that counsel should have consulted with an expert concerning Jarmon's childhood trauma, mental health, learning disabilities, or history of addiction. In addition, it is entirely possible that it was counsel who arranged for Jarmon's family members to address the trial court—an arguably effective way of presenting the mitigating factors that Jarmon cites. Nevertheless, Jarmon has not demonstrated a reasonable probability that his sentence would have been different if trial counsel had investigated further and presented expert witnesses on these mitigating issues.

{¶35} Jarmon also claims that trial counsel should have objected to the constitutionality of his indefinite sentence under the Reagan Tokes Law to preserve it for review. We have consistently held that the Reagan Tokes Law is constitutional. *See State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 11, 20 (stating that the Reagan Tokes Law does not violate due process, the separation-of-powers doctrine, or the right to trial by jury). Despite some disagreement among Ohio appellate districts on this issue, the Ohio Supreme Court has not resolved it. Until that court does so, in this district an indefinite sentence imposed under the Reagan Tokes Law is constitutional. We see no prejudice from counsel's not objecting to the constitutionality of Jarmon's sentence.

{¶36} Jarmon has failed to establish a claim for ineffective assistance of trial counsel. The second assignment of error is overruled.

*State v. Jarmon*, *supra*, ¶¶ 20-36.

The decision of the Twelfth District on the issue of ineffective assistance of trial counsel is entitled to deference under 28 U.S.C. § 2254(d)(1) and (2). The court recognized the governing standard for ineffective assistance of trial counsel claims adopted by the Supreme Court in

19

*Strickland v. Washington,* 466 U.S. 668 (1984), to wit, that a criminal defendant must show both deficient performance by his attorney and resulting prejudice. It applied that standard to all aspects of trial counsel's performance which were challenged and concluded that there was neither deficient performance nor prejudice. Because the Twelfth District's application of *Strickland* was objectively reasonable, this Court should defer to it and therefore dismiss Ground Two with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends Respondent's statute of limitations defense be overruled, but that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 11, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

20

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #